STATE OF MINNESOTA

IN SUPREME COURT

A24-0128

Court of Appeals

Gaïtas, J.
Concurring, McKeig, Moore, III, Hennesy JJ.
Took no part, Procaccini, J.

In the Matter of the Civil Commitment of:
Anthony Blake Swope.

Filed:  October 8, 2025
Office of Appellate Courts

_____

Mallory K. Stoll, Blahnik, Prchal & Stoll, PLLC, Prior Lake, Minnesota, for appellant Jaspers, Moriarty & Wetherille, P.A.

Ronald Hocevar, Scott County Attorney, Elisabeth M. Johnson, Assistant County Attorney, Shakopee, Minnesota, for respondent Scott County.

_____

S Y L L A B U S

A patient who has been civilly committed as mentally ill under Minnesota Statutes chapter 253B, is entitled to the assistance of the patient's court-appointed counsel in extraordinary writ proceedings to enforce the patient's right to priority admission to a state-operated treatment program under section 253B.10, subdivision 1(b), and the county of financial responsibility must pay court-appointed counsel a reasonable sum for counsel's work in connection with those proceedings.

Reversed.

GAÏTAS, Justice.

In this case, we must decide whether a patient who has been civilly committed as mentally ill under Minnesota Statutes chapter 253B is entitled to the assistance of the patient's court-appointed counsel in extraordinary writ proceedings to enforce the patient's right under section 253B.10, subdivision 1(b), to be timely moved from a jail to a state-operated treatment program, and whether court-appointed counsel must be paid for the representation. The answers to these questions turn on whether a petition for an extraordinary writ under these circumstances is a "proceeding under" chapter 253B. Minnesota Statutes section 253B.07, subdivision 2c, grants any person receiving treatment or committed under chapter 253B the right to be represented by counsel "at any proceeding under this chapter." *See also* Minn. Stat. § 253B.23, subd. 1(a) ("In each *proceeding under this chapter* the court shall allow and order paid . . . to the patient's counsel, when appointed by the court, a reasonable sum for travel and for the time spent in court or in preparing for the hearing." (emphasis added)).

Appellant Jaspers, Moriarty & Wetherille, P.A. (appointed counsel) is a law firm, which the district court appointed to represent civilly committed patient Anthony Blake Swope at the outset of commitment proceedings. After appointed counsel petitioned for writs of mandamus and habeas corpus to enforce Swope's right to be admitted to a state-operated treatment program, the county of commitment, respondent Scott County, refused to pay appointed counsel's attorney fees. On appointed counsel's motion, the district court ordered Scott County to pay attorney fees for the extraordinary writ

2

proceedings. Scott County appealed, and the court of appeals reversed, holding that the petition for writs of mandamus and habeas corpus was not a "proceeding under" chapter 253B. We conclude that a petition for an extraordinary writ to enforce a civilly committed patient's right under section 253B.10, subdivision 1(b), to be timely admitted to a state-operated treatment program is a proceeding under chapter 253B for which Swope was entitled to the representation of his appointed counsel. Accordingly, we reverse.

**FACTS**

In June 2022, Anthony Blake Swope was arrested and jailed after he allegedly assaulted hospital staff during an assessment. He was charged with two felony offenses. Based on a subsequent psychiatric evaluation, the district court found Swope incompetent to proceed in the criminal case. Scott County filed a petition for commitment on September 2, 2022, moving to civilly commit Swope to a treatment facility because he was "believed to be a person who poses a risk of harm due to mental illness."

By court order, appointed counsel represented Swope in the civil commitment proceedings. Appointed counsel has had a contractual agreement with Scott County since 2007. Under the agreement, appointed counsel has accepted court appointments to provide representation in certain types of cases, and Scott County has paid appointed counsel for the representation.

Represented by appointed counsel, Swope agreed to be civilly committed. On September 14, 2022, the district court civilly committed Swope for an initial period not to exceed six months.

3

Because Swope was in jail, he qualified for priority admission to a state-operated treatment program under Minnesota Statutes section 253B.10, subdivision 1(b) (2022) (the priority admission statute).[1]  Under the version of the priority admission statute in effect at the time—the 2022 version—a civilly committed person in jail was to be "admitted to a state-operated treatment program within 48 hours" of the district court's commitment order.  Minn. Stat. § 253B.10, subd. 1(b); *see also Ly v. Harpstead,* 16 N.W.3d 788, 799 (Minn. App. 2025), *rev. denied*, (Minn. Apr. 15, 2025) (holding that this version of the priority admission statute imposed on the Minnesota Commissioner of Human Services "a clear legal duty to admit covered patients to a state-operated treatment program within 48 hours of the district court's issuance of an order of commitment").

One month after the district court's civil commitment order, Swope remained in the Scott County Jail.  On October 13, 2022, appointed counsel petitioned the district court for writs of mandamus and habeas corpus, alleging a violation of the priority admission statute.  Initially, appointed counsel filed the petition in the civil commitment case and named the Commissioner of Human Services as a party.  After the Office of the Minnesota Attorney General sent appointed counsel a letter stating that the Commissioner could not be made a party to a mental health commitment proceeding, appointed counsel withdrew the initial petition, initiated a separate case, and filed the petition in the separate case.

---

[1]     The Legislature amended this provision in 2023 to require placement within 48 hours of when "a medically appropriate bed is available."  Minn. Stat. § 253B.10, subd. 1(e) (2024).  This amendment also specified that "[t]his paragraph expires on June 30, 2025." *Id.*  In 2025, the Legislature extended this provision to June 30, 2027. Minn. Stat. §§ 253B.10, subd. 1(e), 253B.1005, subd. 2, *as amended by*, Act of May 23, 2025, ch. 38, art. 3, §§ 41–42.

4

The district court granted the petition for a writ of mandamus, reserved ruling on the request for a writ of habeas corpus, and ordered the Commissioner to admit Swope to a mental health treatment facility.[2]  Additionally, the district court issued a transportation order directing the Scott County Sheriff's Office to transport Swope from the Scott County Jail to Community Behavioral Health Hospital Annandale.  Swope was admitted to this facility.

Scott County then refused to pay appointed counsel for representing Swope in the extraordinary writ proceedings.  Appointed counsel moved the district court for an order compelling payment of attorney fees.  Scott County opposed the motion, claiming that the extraordinary writ proceedings were not "proceeding[s] under" chapter 253B—as referenced in Minnesota Statutes sections 253B.07, subdivision 2c, and 253B.23, subdivision 1(a)—and thus contending that it was not legally required to pay appointed counsel's fees for representing Swope in those proceedings.

In January 2023, the district court granted appointed counsel's motion for attorney fees, determining that appointed counsel's work in the extraordinary writ proceedings had been "directly related" to Swope's civil commitment.  The district court stated that "[i]t is clear in Chapter 253B that a patient's court-appointed attorney is not discharged until the commitment is terminated or until the Court discharges."  Further, the district court stated,

---

[2]     The case currently before us is the original commitment proceeding.  The district court's mandamus order was filed into the separate court file for the extraordinary writ proceedings.  We take judicial notice of the district court's mandamus order because it involved a related proceeding. *See Smisek v. Comm'r of Pub. Safety*, 400 N.W.2d 766, 768 (Minn. App. 1987) (taking judicial notice of a district court order in a related proceeding).

5

"[c]ounsel represents patient in all proceedings under Chapter 253B and must be a 'vigorous advocate' for patient. This includes protecting and enforcing patient's rights." The district court found that "[t]he separate habeas corpus petition and petition for writ of mandamus . . . is directly related to proceedings in Chapter 253B" because "[w]ithout the commitment in this file and the continued detention of [Swope] in the Scott County Jail directly as a result of the hold in this file, there would be no separate civil action." Though the district court acknowledged that "[n]ot all work in a collateral action would mandate payment of fees," it stated that "[i]t must be a case-by-case determination." It ordered Scott County to "pay [appointed counsel] in full for representation of [Swope] in this court file and in the related action."[3]

Seven months later, Scott County still had not paid appointed counsel for the representation of Swope in either the civil commitment proceedings or the extraordinary writ proceedings. Appointed counsel brought a motion to compel Scott County to pay the outstanding attorney fees or to schedule an order-to-show-cause hearing. In August 2023, the district court issued a second order. The district court found that Scott County's failure to pay attorney fees—including fees that Scott County acknowledged it owed to appointed counsel—was "unreasonable." The district court ordered judgment against Scott County in the amount of $16,251.60 for the unpaid attorney fees.

---

[3]  Scott County also refused to pay appointed counsel for its work in connection with Swope's commitment proceedings. The district court ordered Scott County to pay appointed counsel for representing Swope in those proceedings as well. That portion of the district court's order is not before us.

Following the district court's second order, Scott County appealed to the court of appeals. The court of appeals affirmed in part, reversed in part, and remanded. *In re Swope*, 13 N.W.3d 52, 60 (Minn. App. 2024). It reversed the district court's order for Scott County to pay appointed counsel for representing Swope in the extraordinary writ proceedings. *Id.* The court of appeals determined that an extraordinary writ proceeding to enforce a patient's statutory right to transfer to a mental health treatment program is not a "proceeding under" chapter 253B, and thus, an appointed attorney may not be compensated for representing a patient in such a proceeding.[4] *Id.* at 56–57. However, the court of appeals affirmed the district court's order requiring Scott County to pay appointed counsel for representing Swope in the initial civil commitment proceeding. *Id.* at 60. The court of appeals remanded to the district court to determine the amount of attorney fees that appointed counsel reasonably incurred in representing Swope in the civil commitment proceeding and to "properly analyze the legal issues arising from the parties' arguments over whether their contract requires the county to pay the disputed fees." *Id.*

Appointed counsel petitioned for review, seeking review of just one issue—whether a petition for an extraordinary writ to enforce the priority admission statute is a proceeding under chapter 253B, for which a patient is entitled to the assistance of the patient's appointed counsel and for which appointed counsel should be compensated. We granted appointed counsel's petition for review.

---

[4] A concurring opinion urged the Legislature to provide for payment of fees incurred in enforcing chapter 253B, including the right to treatment. *Swope*, 13 N.W.3d at 60 (Cleary, J., concurring).

7

## ANALYSIS

Swope's appointed counsel contends that Swope was entitled to the assistance of appointed counsel in petitioning for extraordinary writs to enforce his right under the priority admission statute to be moved from the Scott County jail to a state-operated treatment program within 48 hours of his civil commitment. Furthermore, appointed counsel argues that because Swope was entitled to the representation, Scott County must pay for it. Appointed counsel maintains that Swope had a statutory right to be represented in the extraordinary writ proceedings under Minnesota Statutes chapter 253B, the Minnesota Treatment and Commitment Act.

Scott County responds that Swope had no right to be represented by appointed counsel in pursuing an extraordinary writ to enforce the priority admission statute. According to Scott County, it therefore has no corresponding obligation to pay appointed counsel for seeking extraordinary relief.

To resolve the issue before us, we first consider Minnesota's statutes governing civil commitment and treatment for mental illness, then interpret the statute governing the right to counsel in such proceedings, and finally apply the statute to the circumstances here.

### A.

We begin our analysis by identifying the applicable statutes. Minnesota Statutes chapter 253B, the Minnesota Commitment and Treatment Act, governs voluntary and involuntary civil commitment and treatment of patients with mental illness, chemical dependency, or developmental disability. "The statutory scheme emphasizes medical evaluation and procedural protection for potential commitments, provides certain rights to

patients at treatment facilities, and creates a state policy in favor of voluntary treatment."

*Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 549–50 (Minn. 2016).

Chapter 253B provides a right to counsel, including court-appointed counsel. The scope of that right is addressed in section 253B.07, subdivision 2c (appointed counsel statute):

> A patient has the right to be represented by counsel at *any proceeding under this chapter*. The court shall appoint a qualified attorney to represent the proposed patient if neither the proposed patient nor others provide counsel. The attorney shall be appointed at the time a petition for commitment is filed or when simultaneous competency and civil commitment examinations are ordered under subdivision 2a, whichever is sooner. In all proceedings under this chapter, the attorney shall:
> (1) consult with the person prior to any hearing;
> (2) be given adequate time and access to records to prepare for all hearings;
> (3) continue to represent the person throughout *any proceedings under this chapter* unless released as counsel by the court; and
> (4) be a vigorous advocate on behalf of the person.

(Emphasis added.)

When the district court appoints counsel to represent a patient in a proceeding under chapter 253B, section 253B.23, subdivision 1(a), addresses payment for the representation. That statute provides that "*[i]n each proceeding under this chapter* the court shall allow and order paid . . . to the patient's counsel, when appointed by the court, a reasonable sum for travel and for the time spent in court or in preparing for the hearing." (Emphasis added.)

Here, appointed counsel was appointed to represent Swope in the initial commitment proceedings. Following those proceedings, appointed counsel was not discharged by the court.

9

Thereafter, appointed counsel petitioned for writs of mandamus and habeas corpus to enforce Swope's right under chapter 253B to be transferred from jail to a treatment program within 48 hours. Under the priority admission statute, the Commissioner of Human Services must admit certain categories of patients "to a state-operated treatment program within 48 hours." Minn. Stat. § 253B.10, subd. 1(b). That priority admission statute includes patients "under civil commitment for competency treatment and continuing supervision under Minnesota Rules of Criminal Procedure, rule 20.01, subdivision 7." Minn. Stat. § 253B.10, subd. 1(b)(2) (2022).[5] Swope, who was under civil commitment for competency treatment under rule 20.01, was entitled to priority admission to a state-operated treatment program.

To vindicate Swope's statutory right to priority admission, appointed counsel petitioned for writs of mandamus and habeas corpus. Writs of mandamus and habeas corpus are types of legal proceedings known as "extraordinary writs." *See Extraordinary Writ*, *Black's Law Dictionary* (12th ed. 2024). An extraordinary writ is "[a] writ issued by a court exercising unusual or discretionary power. Examples are certiorari, habeas corpus, mandamus, and prohibition." *Id.* A writ of mandamus may be issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." Minn. Stat. § 586.01 (2024). The statute authorizing writs of habeas corpus provides:

---

[5] Again, the Legislature amended this provision in 2023 to require placement within 48 hours of when "a medically appropriate bed is available." Minn. Stat. § 253B.10, subd. 1(e) (2024). This amendment will extend until June 30, 2027.

A person imprisoned or otherwise restrained of liberty, except persons committed or detained by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon the judgment, may apply for a writ of habeas corpus to obtain relief from imprisonment or restraint.

Minn. Stat. § 589.01 (2024).

Having identified the applicable law, we must next determine whether the right to appointed counsel under chapter 253B includes a right to representation in an extraordinary writ proceeding[6] to enforce the priority admission statute.

B.

To determine whether Swope had a statutory right to be represented by his appointed counsel in petitioning for extraordinary writs to enforce the priority admission statute, the precise question we must decide is whether the phrase in the appointed counsel statute "any proceeding under this chapter" includes such proceedings. This requires us to interpret the appointed counsel statute. *See* Minn. Stat. § 253B.07, subd. 2c.

We must apply our rules of statutory interpretation to decide this question. In interpreting statutes, we apply de novo review, considering the meaning of the statutes without deference to the lower courts. *In re Benson*, 12 N.W.3d 711, 715 (Minn. 2024). "The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Id.* (citation omitted) (internal quotation marks omitted); *see also* Minn. Stat.

---

[6]     Appointed counsel's arguments focus on the extraordinary writ of mandamus, presumably because the district court granted the petition for a writ of mandamus and did not rule on the separate request for a writ of habeas corpus. Because appointed counsel simultaneously pursued both extraordinary writs, our analysis focuses on whether both extraordinary writs are proceedings under chapter 253B.

11

§ 645.16 (2024). "When a statute is clear and unambiguous, we give effect to the plain meaning of the statutory text." *Benson*, 12 N.W.3d at 715 (citation omitted). "But if the text of the statute is ambiguous, we will go beyond the plain language of the statute to determine the Legislature's intent." *Id.* (citation omitted) (internal quotation marks omitted).

"We interpret statutes so as to give effect to each word and phrase, and we may consult dictionary definitions to determine a word's plain meaning." *Mittelstaedt v. Henney*, 969 N.W.2d 634, 639 (Minn. 2022) (citation omitted) (internal quotation marks omitted). When a word has more than one meaning, it is not necessarily ambiguous. *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994). "The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise." *Id.*

1.

With these rules in mind, we consider the statutory language "any proceeding under this chapter," as used in the appointed counsel statute to define the scope of the right to appointed counsel under chapter 253B. Both parties assert that the plain meaning of the phrase is clear and unambiguous. However, both parties offer different interpretations of the language.

Appointed counsel urges us to interpret "proceeding" as "an inclusive and encompassing term" that may include an underlying lawsuit and all "ancillary matters interconnected to that lawsuit." Citing *Black's Law Dictionary*, appointed counsel notes that the word is broadly defined to include the "acts and events" that make up a lawsuit,

the "procedural means for seeking redress from a tribunal or agency," "[a]n act or step that is part of a larger action," or "[t]he business conducted by a court or other official body." *Proceeding*, *Black's Law Dictionary* (12th ed. 2024). Appointed counsel contends that these varied definitions of the word "proceeding" show that it is an expansive term that refers to much of the business done before courts. And under any of these definitions, appointed counsel maintains, the word "proceeding" clearly includes extraordinary writs brought before a district court.

On the other hand, Scott County contends that the phrase "any proceeding under this chapter" only includes proceedings that are "outlined under" chapter 253B. Stated otherwise, Scott County's argument is that appointed counsel can represent patients only in the type of proceedings that chapter 253B specifically names. Scott County points out that chapter 253B does not reference petitions for writs of mandamus. Moreover, Scott County notes that chapter 253B only mentions habeas corpus to clarify that chapter 253B "does not prohibit anyone from seeking habeas corpus." *See* Minn. Stat. § 253B.23, subd. 5 (stating that nothing in chapter 253B "shall be construed to abridge the right of any person to the writ of habeas corpus"). Thus, according to Scott County, petitions for writs of mandamus and habeas corpus are not "proceedings" under the chapter. Additionally, Scott County argues that the word "under" as used in section 253B.07, subdivision 2c, is significant. Citing dictionary definitions of this word, Scott County contends that proceedings "under" chapter 253B are those that are "below," "established by," "pursuant to," "subject to," or "required by" the chapter. Scott County concludes from these definitions that petitions for writs of mandamus and habeas corpus are not proceedings

13

"under" chapter 253B. To reach this conclusion, Scott County again relies on the fact

chapter 253B does not reference writs of mandamus and scarcely mentions writs of habeas

corpus.[7]

---

[7]     The court of appeals adopted Scott County's approach. It observed that the Legislature introduced chapter 253B by stating: "This chapter may be cited as the 'Minnesota Commitment and Treatment Act.' " *Swope*, 13 N.W.3d at 57 (quoting Minn. Stat. § 253B.01) (internal quotation marks omitted). Next, the court of appeals relied on its decision in *Moen* for the proposition that a "proceeding under" chapter 253B is one that is "specifically mentioned" in the chapter. *Swope*, 13 N.W.3d at 57 (citing *In re Moen*, 837 N.W.2d 40, 50–51 (Minn. App. 2013)). The court of appeals then noted that chapter 253B specifically mentions several types of proceedings, such as a prehearing examination, Minn. Stat. § 253B.07, subds. 4, 5; a preliminary hearing, Minn. Stat. § 253B.07, subd. 7; a commitment hearing, Minn. Stat. § 253B.08, subds. 1, 3; a treatment-review hearing, Minn. Stat. § 253B.12, subds. 1, 2a; judicial review of and a hearing on an intended revocation of a provisional discharge, Minn. Stat. § 253B.15, subds. 3b, 3c; a hearing on a petition for release from commitment, Minn. Stat. § 253B.17, subds. 1, 2; a hearing before a special review board, Minn. Stat. § 253B.18, subd. 4c; and appeals of a special review board decision, Minn. Stat. § 253B.18, subd. 13. *Swope*, 13 N.W.3d at 57. And the court of appeals concluded that because "a proceeding resolving a dispute over a patient's right to treatment is not a proceeding specifically mentioned in [chapter 253B] . . . it is therefore not a proceeding 'under' the act." *Swope*, 13 N.W.3d at 57.

The court of appeals cited *In re Navratil*, 799 N.W.2d 643 (Minn. App. 2011), to support its conclusion that a proceeding resolving a dispute over a patient's right to treatment is not a proceeding specifically mentioned in the Minnesota Commitment and Treatment Act and is therefore not a proceeding "under" the Act. *Swope*, 13 N.W.3d at 57. *Navratil* involved an individual challenging his indeterminate civil commitment as a sexually dangerous person, arguing that "ordering his indeterminate commitment without regard to the availability of treatment amounts to a deprivation of due process." 799 N.W.2d at 650. In *Navratil*, the court of appeals concluded that although a committed individual has a statutory and constitutional right to treatment, "the commitment process is not the proper avenue for asserting a right-to-treatment argument," and that "[t]he treatment of committed individuals is the province of the commissioner of human services, not the district court." *Id.* at 650–51.

Unlike the committed individual in *Navratil*, Swope does not argue that he has a statutory right to treatment under section 253B.03, subdivision 7 ("A patient receiving services under this chapter has the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary."). Rather, Swope has consistently argued that he had a right to be transferred from jail to a state-operated treatment program under the priority admission statute.

2.

Mindful of the parties' arguments, we now consider the language of the appointed counsel statute and the phrase "any proceeding under this chapter" as used in section 253B.07, subdivision 2c, to describe the scope of the right to appointed counsel. We agree with both parties that the phrase "any proceeding under this chapter" is unambiguous. However, contrary to Scott County's argument, we conclude that this phrase, by its plain language, includes extraordinary writ proceedings brought to enforce a patient's right under the priority admission statute to timely transfer from jail to a state-operated treatment program. We reach this conclusion by examining the language of the phrase "any proceeding under this chapter."

i.

Initially, we turn to the words "any proceeding." We determine that the Legislature's use of these words together and within the context of the appointed counsel statute clearly evince an intent to include a wide range of legal filings, hearings, and events.

As appointed counsel notes, *Black's Law Dictionary* provides an expansive definition of the word "proceeding," which encompasses all manner of business that comes before a court. Proceedings can include "acts and events" that make up a lawsuit, the "procedural means for seeking redress from a tribunal or agency," "[a]n act or step that is part of a larger action," or the business conducted by a court or other official body. *Proceeding*, *Black's Law Dictionary* (12th ed. 2024). The Legislature's use of the broad term "proceedings" is significant. If the Legislature had intended to restrict "proceedings" to specific types of proceedings, we presume that the Legislature would have done so by

15

including limiting language in the statute. *See Lykins ex rel. Duranske v. Anderson Contracting, Inc.*, 20 N.W.3d 880, 891 (Minn. 2025) (stating that if the Legislature had intended to restrict the language in a statute, it would have done so).

Additionally, we observe that the appointed counsel statute, considered as a whole, uses the term "proceeding" broadly. *See State v. Friese*, 959 N.W.2d 205, 210 (Minn. 2021) (stating that we read a "statute as a whole"). Proceedings referenced in other subdivisions of section 253B.07 include motions and hearings before a court and events that may not occur in a courtroom setting. After setting forth the right to counsel in subdivision 2c, subdivisions 2d and 7 reference a patient's right to move for a change of venue and to have a preliminary hearing—events traditionally understood to be "proceedings" because they occur in court. Minn. Stat. § 253B.07 subds. 2d, 7. But subdivision 5 concerns a prehearing examination, which is not an event commonly understood to be a "proceeding" because it takes place at a treatment facility (or other suitable place), and provides that a patient's counsel may attend the examination. *See* Minn. Stat. § 253B.07, subd. 5 (stating that "[t]he county attorney and the patient's attorney may be present during the examination"). Because the word "proceeding" is broadly defined, and the Legislature's use of the word within section 253B.07 is correspondingly extensive, "proceeding" clearly encompasses a wide array of events concerning a patient's commitment.

Furthermore, the Legislature's use of the word "any" in conjunction with "proceeding" manifests the Legislature's intent to expand rather than limit a patient's right to representation under chapter 253B. *See In re PERA Police & Fire Plan Line of Duty*

*Disability Benefits of Brittain*, 724 N.W.2d 512, 519 (Minn. 2006) (stating that the Legislature's use of the word "any" as a modifier demonstrates "the intent to be inclusive, not restrictive"). The term "any proceeding" in the appointed counsel statute is therefore more expansive than a "proceeding" without such a modifier. *See In re Application of Moratzka*, 988 N.W.2d 42, 47–48 (Minn. 2023) (stating that the Legislature's use of the modifier "any" with the word "instrument" resulted in an "extremely expansive" term).

Given the breadth of the words "any proceeding," we conclude that petitions for habeas corpus and mandamus, and legal proceedings associated with these extraordinary writs, constitute "any proceeding" for the purpose of the appointed counsel statute. This, however, does not end our inquiry. Although we determine that the Legislature plainly intended to afford a broad right to appointed counsel by extending that right to "any proceeding," the Legislature also manifested its intent to restrict the right by including the phrase "under this chapter." We turn to the meaning of that phrase next.

ii.

We now consider the meaning of the phrase "under this chapter" as used in the appointed counsel statute.

Although we need not and do not decide the meaning of "under this chapter" for all intents and purposes, we are convinced that a proceeding to enforce a patient's enumerated right under the chapter to be timely transferred from jail and admitted to a state-operated treatment program is a proceeding "under" chapter 253B. The priority admission statute under chapter 253B specifically provides patients who have been found incompetent to proceed in a criminal case and have been civilly committed with a right to be moved from

17

jail to a state-operated treatment program. Minn. Stat. § 253B.10, subd. 1(b)(2) (2022). In *Ly v. Harpstead*, on remand from our decision exercising appellate jurisdiction over the Commissioner of Human Services' appeal of an order granting a peremptory writ of mandamus, the court of appeals held that the version of the priority admission statute that was in effect when Swope was committed imposed on the Commissioner "a clear legal duty to admit covered patients to a state-operated treatment program within 48 hours of the district court's issuance of an order of commitment." 16 N.W.3d at 799; *see Ly v. Harpstead*, 7 N.W.3d 560 (Minn. 2024). It is difficult to see how a proceeding brought by appointed counsel to enforce this right provided under chapter 253B would *not* be a proceeding under chapter 253B. Even applying the dictionary definitions of "under" that Scott County supplied—"below," "established by," "pursuant to," "subject to," or "required by"—we conclude that a proceeding to enforce the priority admission statute is plainly a proceeding "under" chapter 253B.[8]

---

[8] Nor are we persuaded by Scott County's argument that "any proceeding *under this chapter*" includes only hearings specifically named by statutes within chapter 253B. We discern a few problems with that approach. First, we are not convinced that the term "under this chapter" plainly limits representation to proceedings specifically *named* in the chapter. And "[w]e cannot add words of qualification to [a] statute that the Legislature has omitted." *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 756 (Minn. 2013). Second, because the chapter *does* reference petitions for writs of habeas corpus—stating that nothing in chapter 253B "shall be construed to abridge the right of any person to the writ of habeas corpus," Minn. Stat. § 253B.23, subd. 5—Scott County's argument does not hold up for writs of habeas corpus, which was one of the writs that appointed counsel sought in this case. Third, Scott County's argument fails to recognize that the Legislature has made the extraordinary writ of mandamus available to courts "whether especially provided for by statute or not." Minn. Stat. § 480.04 (2024).

We note that this interpretation of the phrase "proceedings under this chapter" is consistent with our decision in *Latourell v. Dempsey*, 518 N.W.2d 564 (Minn. 1994). There, we interpreted similar language under a different chapter, the Minnesota Parentage Act, Minnesota Statutes sections 257.51–.74 (1992), and we determined that a mother was entitled to appointed counsel to respond to a father's custody and visitation motion brought in the context of a paternity case. *Latourell*, 518 N.W.2d at 566. The Parentage Act stated that the district court "shall appoint counsel for a party who is unable to pay timely for counsel in proceedings under [the act]." *Id.* at 565 (quoting Minn. Stat. § 257.69, subd. 1) (internal quotation marks omitted). In considering whether a response to a father's custody motion was a "proceeding under" the Parentage Act, we examined the substantive provisions of that act. *See id.* at 565-66. We observed that a district court's order or judgment under the Parentage Act "shall contain provisions concerning . . . the custody of the child . . . [and] visitation privileges with the child." *Id.* at 565 (alterations in original) (quoting Minn. Stat. § 257.66, subd. 3). Additionally, we noted that another provision in the Parentage Act governed custody and visitation determinations made under the act. *Id.* at 565–66 (citing Minn. Stat. § 257.541). Given these substantive provisions of the Parentage Act, we concluded that custody and visitation determinations are proceedings under the act, and the mother was entitled to appointed counsel. *Id.* at 566.

Analogously, chapter 253B provides a jailed patient who has been civilly committed with a right to priority admission to a state-operated treatment program. Because this is a substantive right provided within chapter 253B, a proceeding brought to enforce that right is a proceeding "under" chapter 253B.

19

## C.

Having determined that a petition for an extraordinary writ to enforce the priority admission statute is a proceeding under chapter 253B, we apply this determination to the circumstances in this case.

The court of appeals ruled that appointed counsel's petition for writs of mandamus and habeas corpus to enforce Swope's right to priority admission, and the ensuing proceedings in connection with the filing, did not constitute "any proceeding under [chapter 253B]." *Swope*, 13 N.W.3d at 56–57. Thus, the court of appeals reversed the district court's determination that Swope was entitled to the assistance of his appointed counsel to pursue these proceedings and that appointed counsel was entitled to be paid for the representation. *Id.* at 60.

We have concluded that a petition for an extraordinary writ to enforce the priority admission statute is a proceeding under chapter 253B. Because "[a] patient has the right to be represented by counsel at *any proceeding under this chapter*," Minn. Stat. § 253B.07, subd. 2c (emphasis added), and because "[*i*]*n each proceeding under this chapter* the court shall allow and order paid . . . to the patient's counsel, when appointed by the court, a reasonable sum for travel and for the time spent in court or in preparing for the hearing," Minn. Stat. § 253B.23, subd. 1(a) (emphasis added), appointed counsel is entitled to be compensated for work in connection with the petition filed on Swope's behalf. The court of appeals erred in determining otherwise and in reversing the district court's order for attorney fees for the extraordinary writ proceedings.

20

Under Minnesota Statutes section 253B.23, subdivision 1, the county of financial responsibility is responsible for paying appointed counsel. Accordingly, the portion of the district court's order requiring Scott County to pay attorney fees to Swope's counsel for work in the extraordinary writ proceedings is reinstated. *Cf. State v. Malecha*, 3 N.W.3d 566, 569 (Minn. 2024) (reversing the decision of the court of appeals and reinstating the district court's order).

As a final matter, we recognize that our decision in this case may impact counties throughout the State of Minnesota. We also acknowledge that, although most counties contend with significant budget constraints, our decision may have an outsized impact on counties outside of the metropolitan area and in greater Minnesota. Similar concerns were raised in *Latourell*, where we concluded that a county was responsible for representing a parent under the Parentage Act. *See Latourell*, 518 N.W.2d at 566. We are sympathetic to these concerns. But, as we noted in *Latourell*, "[w]e will not infer a legislative intent contrary to that expressed by the unambiguous language of a statute." *Id.*

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.

PROCACCINI, J., took no part in the consideration or decision of this case.

21

CONCURRENCE

MᴄKEIG, Justice (concurring).

I agree with the court's conclusion that a petition for an extraordinary writ to enforce the priority admission statute constitutes a proceeding under Minnesota Statutes chapter 253B (2024). Accordingly, I concur with the court's determination that a patient who has been civilly committed as mentally ill under chapter 253B is entitled to representation by their court-appointed counsel in such a proceeding. Because the Legislature has provided that the county of financial responsibility is responsible for the payment of court-appointed attorney's fees for "each proceeding under [Chapter 253B]," I agree that Scott County must pay court-appointed counsel a "reasonable sum . . . for the time spent in court or in preparing for the hearing" regarding Swope's petition for an extraordinary writ. Minn. Stat. § 253B.23, subd. 1(a). Accordingly, I join the majority opinion.

I write separately to emphasize the burden this decision could place on counties across Minnesota, particularly in rural areas, and to invite the Legislature to consider enacting an exception to the general rule, thereby making the State of Minnesota responsible for paying attorney fees incurred during extraordinary writ proceedings to enforce the priority admission statute. Rural areas have difficulty retaining legal practitioners, and this lack of attorneys limits access to justice for residents living in Greater Minnesota. *See generally* Michele Statz et al., *"They Had Access, but They Didn't Get Justice": Why Prevailing Access to Justice Initiatives Fail Rural Americans*, 28 Geo. J. on Poverty L. & Pol'y 321 (2021) (arguing that current access to justice initiatives do not adequately address the needs of rural communities); *see also* Elaine S. Povich, *Lack of*

*Rural Lawyers Leaves Much of Rural America Without Support*, MinnPost (Jan. 26, 2023) (highlighting access to justice issues nationwide); *ABA Profile of the Legal Profession*, Am. Bar Ass'n 10 (2020) (listing the number of attorneys per county in Minnesota, including just two attorneys in Red Lake County). In addition to the legal deserts[9] that exist in these communities, many rural counties already struggle to meet spending needs and are forced to make cuts to critical services, often due to diminished tax revenue resulting from out-migration. Statz et al., *supra*, at 325; *see* Julie Blaha, *Minnesota County Budgets*, Office of the State Auditor (Apr. 24, 2025) (showing stark differences in revenue between Minnesota counties).

I agree with the court that the statute as written requires counties to pay for court-appointed counsel under these circumstances. But I am concerned that raising costs for rural counties will further stretch their limited budgets, cause cuts to other important legal services, and, consequently, discourage attorneys from remaining in rural areas with even less funding for necessary legal work.

I encourage the Legislature to examine this issue and consider whether the State instead should fund court-appointed counsel for these types of proceedings where county budgets are already limited. Part of the rationale for assigning general financial responsibility to the county of residence for the expenses of commitment, including

---

[9] A "legal desert" is a large area where residents have to travel far to find a lawyer for routine matters. *ABA Profile of the Legal Profession*, Am. Bar Ass'n 2 (2020). On average across the U.S., there are four lawyers for every 1,000 residents. *Id.* But 40 percent of all counties and county-equivalents in the U.S. have less than one lawyer per 1,000 residents. *Id.*

attorney fees, centers on the localized nature of civil commitment proceedings, which involve counties in the pre-petition screening process, the filing of commitment petitions, and the provision of case management services to patients. *See* Minn. Stat. § 253B.07, subds. 1, 2; Minn. Stat. § 253B.23, subd. 1(b). It makes sense that the costs of legal representation should be allocated to the county in these cases, reflecting the county's integral role in the local commitment process and its connection to patients' care and legal representation.

But that rationale does not apply in the same way when the priority admission statute is involved, where the counties of our State have little say regarding how that law is implemented by the State of Minnesota. As the statute now operates following its amendment, civilly committed patients will be admitted from a jail to a state-operated treatment program "within 48 hours of the Office of Executive Medical Director . . . or a designee determining that a medically appropriate bed is available." Minn. Stat. § 253B.1005, subd. 2 (expiring on June 30, 2027). The executive medical director has responsibility to "oversee the clinical provision of inpatient mental health services provided in the state's regional treatment centers." Minn. Stat. § 246C.09, subd. 3(1) (2024). By definition and necessity, the decisions made by the State's executive medical director are focused on state-wide mental health services and are well outside the control of an individual county.

An example of how this issue could be addressed is found in the law creating the Supreme Court Judicial Appeal Panel. Attorney fees incurred for proceedings before the Supreme Court Appeal Panel are paid by the Minnesota Direct Care and Treatment

executive board, as specified in Minnesota Statutes § 253B.19, subdivision 1. *See* Minn. Stat. §§ 253B.02, subd. 7b, 246C.015 (defining "executive board"). This allocation reflects a legislative intent to shift certain costs to the State at specific stages of the commitment process. Similarly, in the hopefully rare instance where extraordinary writ proceedings are necessary to enforce a patient's right to priority admission to a state-operated treatment program under section 253B.10, subd. 1(b), allocating costs of attorney's fees to the State would be a way of lessening the financial burden of these proceedings on counties.

MOORE, III, Justice (concurring).

I join in the majority and join in the concurrence of Justice McKeig.

HENNESY, Justice (concurring).

I join in the majority and join in the concurrence of Justice McKeig.